# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 19-cr-255 (JNE/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Steven Mark Crandell, Jr. (1), | |
| Defendant. | |

Nathan Hoye Nelson, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for the Government); and

Thomas M. Kelly, Kelly & Jacobson, 650 3rd Avenue South, Suite 260, Minneapolis, MN 55402 (for Defendant).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant's Motion for Reconsideration of Order of Detention. (ECF No. 67). For the reasons set forth below, the Court will deny the motion.

## I. BACKGROUND

In October 2019, Defendant Steven Mark Crandell, Jr. was indicted for Conspiracy to Distribute a Controlled Substance. (ECF No. 1). Defendant was ordered detained following an arraignment and detention hearing. (ECF Nos. 21 & 26). In ordering Defendant detained, the Court first noted that there was a rebuttable presumption that no condition or combination of conditions would reasonably ensure Defendant's reappearance and the safety of the community. (ECF No. 26, p. 2). The Court then found that Defendant

had not met his burden of rebutting that presumption and that even if he had, the Government had met its burden to show there were no conditions or combination of conditions that would reasonably ensure the safety of the community or Defendant's reappearance. (*Id*., p. 3). In reaching these findings, the Court explained that Defendant had more than 30 bench warrants issued for his arrest,[1] based on "numerous instances of failure to appear in court and failure to comply with the terms of his probation." (*Id*.). Defendant has since been detained at the Sherburne County Jail. (ECF No. 67).

Defendant has moved for reconsideration of the detention order and for his temporary release. (*Id*.). He seeks relief largely as a result of the COVID-19 pandemic, noting that those confined at jails are at much greater risk for contracting the virus. (*Id*.). Defendant notes that, if released, he could live with his mother, who is the legal guardian of his children. (*Id*.).

## II.   ANALYSIS

Defendant seeks release under two provisions of 18 U.S.C. § 3142: subdivisions (f)(2)(B) and (i)(4). Subdivision (f)(2)(B) permits the reopening of a detention hearing if there is new information available that has a material bearing on the issue of whether there are release conditions that will reasonably assure the defendant's reappearance and protect the safety of the community. Subdivision (i)(4) permits the "temporary release" of a

---

[1] In his motion for reconsideration, Defendant alleges the number of bench warrants is "closer to 18." (ECF No. 67, p. 7). He does not, however, provide anything to support that allegation. And, even if prior bench warrants were presumed to be closer to 18 rather than 30, that difference would not materially change this Court's analysis and conclusions.

2

detainee into the custody of "another appropriate person" if "necessary for preparation of the person's defense or for another compelling reason."

To the extent Defendant seeks release under Section 3142(f)(2)(B) as a result of the COVID-19 pandemic, his reliance on that subdivision is misplaced. Section 3142(f)(2)(B) requires the Court to determine whether the new information identified by Defendant has a material bearing on whether the Court can fashion conditions of release to ensure Defendant "is not a risk of nonappearance or a risk of harm to any others or the community." *United States v. Clark*, No. 19-cr-40068, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). While the Court appreciates the unprecedented nature of the COVID-19 pandemic, Defendant has offered no reason why the pandemic would reduce his risk of nonappearance or the risk that he poses to the community. *See id.* ("The risk of harm *to the defendant* does not usually bear on" a Section 3142(f)(2)(B) analysis.).

Defendant also argues the fact that he now intends to plead guilty, combined with his good behavior while at the Sherburne County Jail, constitute changed circumstances that warrant his release under Section 3142(f)(2)(B). The Court disagrees. To begin, Defendant's decision to plead guilty does not mean that he will appear for future appearances or for sentence. Nor does it have much bearing on whether Defendant would pose a risk to the safety of the community. In fact, were Defendant to plead guilty, he would be subject to mandatory detention pending sentencing. 18 U.S.C. 3143(a)(2). Thus, the Court concludes that Defendant's intent to plead guilty does not constitute a changed circumstance that warrants reconsidering his detention order.

Likewise, Defendant's behavior in jail, though admirable, is not sufficient to rebut the presumption that continued detention is appropriate. Defendant cites to no authority to show that his behavior while detained has any bearing on his ability to appear for future court proceedings or will reduce the risk that he poses to the community if released. Even if it did, his good behavior during the brief period in which he has been detained does not outweigh his extensive history of failing to appear for other court appearances. Defendant has therefore failed to meet his burden to justify reconsideration of his detention order under Section 3142(f)(2)(B).

Finally, Defendant argues that the COVID-19 pandemic presents a compelling reason for his release under Section 3142(i). The Court may consider the risk that continued detention would pose to person's health under this Section. *See United States v. Rebollo-Andino*, 312 Fed. App'x 346, 348 (1st Cir. 2009) (holding the defendant could seek temporary release under Section 3142(i) for medical reasons). Typically, however, relief is granted only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, No. 19-cr-54, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020). In determining whether a defendant's COVID-19 concerns present a compelling reason for release, courts have considered the following factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Clark*, 2020 WL 1446895, at *3. The Court will do the same here.

In assessing the original reasons for Defendant's pretrial detention, the Court must be mindful of the fact that it already determined that pretrial detention was warranted. The Court has reviewed the previous report filed by Pretrial Services regarding Defendant's previous detention proceeding, as well as the supplemental report related to Defendant's current motion. Though the supplemental report concludes that Defendant's mother could provide him an appropriate place to stay while he was released, the original report outlines an extensive history of noncompliance with court orders, including several missed court appearances. The first factor therefore weighs neither for nor against release.

The second factor, the specificity of Defendant's COVID-19 concerns, does not weigh in favor of release. Defendant has not identified any specific underlying health concerns that would put him at an increased risk for a more severe outcome should he contract COVID-19. *See id.* (noting that the defendant established a "specific and particular concern that his status as a diabetic put[] him at an increased risk for experiencing severe illness if he were to contract COVID-19). Instead, Defendant's concerns are largely generalized and based on the fact that the virus could quickly spread among inmates at the Sherburne County Jail because they are housed closely together.

Defendant does not, however, claim that there are any diagnosed cases of COVID-19 at the jail. And the jail has taken extensive measures to reduce the risk of COVID-19, including reducing the number of in-person visitors. *See, e.g.*, *Hamilton*, 2020 WL 1323036, at *2 (denying release where there had been no reported incidents of COVID-19 within the facility where the defendant was being housed and the prison was "taking

5

system-wide precautions to mitigate the possibility of an infection within its facilities"); (ECF No. 73-1 (describing steps the Sherburne County Jail has taken to address COVID-19 pandemic)). Because Defendant has not identified a unique risk that COVID-19 poses to himself, as compared to the jail population at large, this factor weighs against him.

The third factor, the extent to which Defendant's proposed release plan is tailored to mitigate or exacerbate his overall risks, also weighs in favor of continued detention. The Court agrees that there is an increased risk of rapid transmission should COVID-19 enter a jail or prison, given the close quarters in which the inmates reside. But as the Court noted previously, the Sherburne County Jail is taking reasonable precautions to reduce the risk of COVID-19. There is nothing in the record to suggest the facility is unable to provide adequate medical care should Defendant become ill.

In contrast, Defendant has provided little information that would allow the Court to evaluate whether his release would reduce his risk of contracting COVID-19. Though Defendant has identified who he will live with, he has not explained who else will "frequent the home or identif[ied] any screening practices or concrete COVID-19 precautions being taken there." *Clark*, 2020 WL 1446895, at *6. He has also not attempted to identify the type of medical care that will be available to him should he become ill.

Finally, the Court must consider whether Defendant's proposed release plan would increase the risk of COVID-19 being spread to others. As the Court outlined above, Defendant has established that his mother's residence would be a suitable home for him while on temporary release, thus ensuring he would be able to comply with stay-at-home or other similar orders designed to limit the spread of COVID-19 to others. But even

6

assuming Defendant would comply with those orders (a conclusion the Court cannot necessarily draw, given Defendant's history), supervision of high-risk offenders like Defendant still puts significant strain on pretrial service officers. *Id.* at *7. In addition, if Defendant violated his release conditions, law enforcement would be "forced to expend valuable resources during a national crisis to take him back into custody," likely increasing their risk of contracting COVID-19 as well as increasing the risk of COVID-19 spreading to the jail population when Defendant returned. *Id.* At most, this factor is neutral as to whether Defendant has shown a compelling reason for temporary release.

"The mere possibility of an outbreak at the facility [is] not a compelling reason to justify [Defendant's] release." *Id.* at *3. Here, two of the *Clark* factors weigh in favor of continued detention and two, even when viewed in a light most favorable to Defendant, are neutral. As a result, Defendant has failed to show a compelling reason for his release. The Court will therefore deny his motion for reconsideration of his detention order.

### III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Reconsideration of Order of Detention (ECF No. 67) is **DENIED**.

Date: April 15, 2020                                       *s/ Tony N. Leung*
                                                          Tony N. Leung
                                                          United States Magistrate Judge
                                                          District of Minnesota

                                                          *United States of America v. Crandell, Jr.*
                                                          No. 19-cr-255 (1) (JNE/TNL)